David C. Wakefield, Esq.    Bar #: 185736
Law Offices of David C. Wakefield
10620 Treena Street, Suite 230
San Diego, CA 92131
TELEPHONE: 619.241.7112; FACSIMILE: 619.342.7755
E-mail:    dcw@DMWakeLaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANNA MARIE WIGGINS, UAAAC MEMBER; ANNA MARIE WIGGINS IN BEHALF OF ROBERT AARON MCKISSICK; UNITED AFRICAN-ASIAN ABILITIES CLUB;**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MAURICE MITCHEL; AND DOES 1 THROUGH 10, Inclusive**<br><br>**Defendants.** | **Case No: 2:18-cv-00032-MWF-JC**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES FOR MOTION FOR A PRELIMINARY INJUNCTION**<br><br>DATE: May 14, 2018<br>TIME: 10:00 a.m<br>JUDGE: Honorable Michael W. Fitzgerald<br>COURT: First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012 |

i

# TABLE OF CONTENTS

Table of Contents

*MEMORANDUM OF POINTS AND AUTHORITIES FOR MOTION FOR A PRELIMINARY INJUNCTION*........................................................................................**Error! Bookmark not defined.**

**TABLE OF CONTENTS**......................................................................... ERROR! BOOKMARK NOT DEFINED.

**I.     INTRODUCTION** ...................................................................... ERROR! BOOKMARK NOT DEFINED.

**II.    FACTS** ...................................................................................... ERROR! BOOKMARK NOT DEFINED.

**III.   APPLICABLE LAW** ................................................................ ERROR! BOOKMARK NOT DEFINED.

**IV. ARGUMENT** ................................................................................. ERROR! BOOKMARK NOT DEFINED.

**A.     CASE OR CONTROVERSY ISSUES** .................................... ERROR! BOOKMARK NOT DEFINED.

    *1.     Futile Gesture* .....................................................................**Error! Bookmark not defined.**
    *2.     Standing* ...............................................................................**Error! Bookmark not defined.**
   B.     CONTENT DISCRIMINATION........................................................... ERROR! BOOKMARK NOT DEFINED.
   C.     A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS ..................... ERROR! BOOKMARK NOT DEFINED.
    *1.     Denial of the Opportunity to Participate* ..........................**Error! Bookmark not defined.**
    *2.     Integration: Websites Are Not Equal*................................**Error! Bookmark not defined.**
    *3.     Failure To Modify Internet Practices, Policies And Procedures* ................**Error! Bookmark not defined.**
    *4     Failure To Modify Architectural Barrier Removal Procedures* ....................**Error! Bookmark not defined.**
   D.     THE POSSIBILITY OF IRREPARABLE INJURY TO PLAINTIFFS IF PRELIMINARY RELIEF IS NOT GRANTED ... ERROR! BOOKMARK NOT DEFINED.
   E.     A BALANCE OF HARDSHIPS FAVORING THE PLAINTIFFS ...................... ERROR! BOOKMARK NOT DEFINED.
   F.     ADVANCEMENT OF THE PUBLIC INTEREST (IN CERTAIN CASES) ........................ ERROR! BOOKMARK NOT DEFINED.
   G.     MANDATORY INJUNCTION REQUESTED ............................................... ERROR! BOOKMARK NOT DEFINED.

**IV.    CONCLUSION** ....................................................................... ERROR! BOOKMARK NOT DEFINED.

# TABLE OF AUTHORITIES

### CASES

Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666 (2010). ..........................................11

Beadle v. Postal, United States District Court, D. Hawai'i. May 02, 2017 Slip Copy 2017 WL 1731683 ....................15

Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1042 n. 5 (9th Cir.2008).......................................................................6

Gorecki v. Hobby Lobby Stores, Inc., CV 17–1131–JFW (SKx), 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017) ...............10

Hobby Lobby Stores, Inc., 2017 WL 2957736.................................................................................................11

**Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995).** .........................................4

Johnson v. Laura Dawn Apartments, LLC, 2012 WL 33040 at *1 n. 1 (E.D.Cal.2012) (Hollows, M.J.).....................10

Kalani v. Castle Village LLC, 14 F.Supp.3d 1359 (2014)..................................................................................10

Karczewski v. DCH Mission Valley LLC, 862 F.3d 1006 (2017) ........................................................................16

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). ...............................5

i

Nat'l Fed'n of the Blind v. Target Corp., 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006)....................11
Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137–38 (9th Cir.2002). .....................6
Rose v. Springfield-Greene County Health Department, United States District Court, W.D. Missouri, Southern
    Division. December 05, 2008 Slip Copy 2008 WL 11337266 ...............................................16
Schutza v. FRN of San Diego, LLC. United States District Court, S.D. California. February 11, 2015 Not Reported in
    F.Supp.3d 2015 WL 574673....................................................................................15
Weyer, 198 F.3d at 1115...............................................................................................11

S<small>TATUTES</small>

42 U.S.C. § 12101(a)(9)................................................................................................17
42 U.S.C. § 12182(b)(2)(A)(ii) .....................................................................................15

R<small>ULES</small>

*Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local
    Government Entities and Public Accommodations,* 75 FR 43460–01 (July 26, 2010)................11
Title III Technical Assistance Manual, http://www.ada.gov/taman3.html .................................10

R<small>EGULATIONS</small>

28 C.F.R. § 36.302(c)(1)...............................................................................................15

ii

MEMORANDUM OF POINTS AND AUTHORITIES FOR THE MOTION FOR A
PRELIMINARY INJUNCTION
CASE #  **2:18-cv-00032-MWF-JC**

# I.     Introduction

This is "A picture is worth a thousand words,[1]" first impression access action. The case was filed on January 5, 2018. A FAC was filed on February 3, 2018.   For almost 25 years the broad sweep of Congress to eliminate disability discrimination has boiled down to lawsuits concerning architectural barrier removal. Most of these lawsuits settle quickly. Due to the fast settlement, there is the perception that these suits are a fraud and a scam. The broad scope of disability rights laws has been muted by the barrier removal controversy. ADA Title III focuses on access to goods and services. FHAA concerns access to housing and rental services. New construction and barrier removal rules are just two methods of achieving access. This case is about full and equal access to rental services by imploring the prohibition against content discrimination doctrine, the ADA association rule, methods of the ADA participate mandate, the ADA integrate mandate, ADA reasonable modifications, FHAA reasonable accommodations and barrier removal. Now, Plaintiffs file this Motion For Preliminary Injunction as to the said doctrine, said rule, participate and integration mandates and ADA reasonable modifications.

# II.     Facts

Plaintiff United African-Asian Abilities Club is a registered corporation.  The individual Robert Aaron Mckissick is a member of the Plaintiff organization. Defendant MAURICE MITCHEL is the operator of the apartment rental business known as Franklin Allure Apartments located at 5330 Franklin Ave, Los Angeles, CA 90027 (hereinafter referred to as the Property). UAAAC Decl. at 1.

---

[1]
 "Speakers Give Sound Advice". Syracuse Post Standard. page 18. March 28, 1911. "One Look Is Worth A Thousand Words". Piqua Leader-Dispatch. page 2. August 15, 1913.  "Pictorial Magazine of the War (advertisement)". San Antonio Light. page 6. January 10, 1918.

1

Robert Aaron Mckissick has physical impairments and due to these impairments, he has learned to successfully operate a wheelchair for mobility. Robert Aaron Mckissick has cerebral palsy and is unable to walk any distance. Robert Aaron Mckissick said physical impairments substantially limit one or more of the following major life activities, including but not limited to: walking. Additionally, Robert Aaron Mckissick's upper body range of motion and the dexterity of his hands are substantially limited.  Wiggins Decl. at 1-3.

The property was built in 1954 and has 2 stories with 33 units. The rent is approximately:  $1,000.  The internet provides a wealth of information regarding the property. The internet advertises that the property has amenities that include: No Pets Allowed, Parking Covered, 1 space. Parking Available, Pool, High Speed Internet Access, Heating, Smoke Free, Kitchen, Range.  The property advertises on apartments.com.  UAAAC Decl. at 4.

The Internet photographs and text suggest a preference for people without disabilities. The Internet picture does not provide any depiction of any access for people with disabilities. UAAAC Decl. at 5-7.

The property has some access features. The property an accessible path of travel. UAAAC Decl. at 8.

There are architectural barriers on the property. The call button was too high and was not positioned in a manner to make it readily accessible and usable by the public and residents using mobility apparatuses.  The lowered call button is very critical to humans that use mobility tools because they sit lower and they cannot reach buttons that are high. Also, the doorknob required tight twisting.  Many elderly and residents have difficulty grasping round doorknobs.  The path of travel has steps without access way signs. Without way signs the public and residents would need to search for the accessible entrance or presume that there is not an

2

accessible entrance.  Also, the mailboxes were too high.  The lowered mailboxes are very important to people that use mobility devices because they sit lower and they cannot reach mailboxes that are high.  Additionally, the parking lot lacks accessible parking.  The accessible parking is the first accessible feature that people with disabilities seek out.  The accessible parking must have the correct access aisle, which is 5x9 or for the van 8x9, must have the International Symbol of Accessibility, must have the $250 tow away sign, must have the van accessible sign and must have the tow away sign at every parking lot entrance.  Also, the parking space must be the closest to the entrance.  Moreover, the stairways had no color contrasting for people with eye conditions.  In fact, none of the steps found had color contrasting.  People with sight challenges have a problem distinguishing between colors that are very similar. If the person with a sight limit cannot distinguish between colors within the path of travel or steps the person will not be able to traverse within the environment. Color contrasting allows people with sight conditions to distinguish between objects within the environment and to enable them to safety negotiate traversing the environment.  Also, the toilet at the common area had no grab bars.  Also, the soap dispenser was too high.  The cabinet type sink had no knee clearance for wheelchair access.  Moreover, the toilet and soap and paper towel dispensers were too high.  It is very important to have an accessible bathroom because most people with mobility conditions must use the bathroom urgently.  The entrance to the bathroom must be wide enough for mobility device to enter and to maneuver.  The entrance to the toilet stall must be wide enough for the same reason. There must be the side approach to the toilet to allow the person using a mobility device to slide on to the toilet.  There must be the front approach to allow a male using a mobility device to urinate without leaving the mobility device or to allow a person using a mobility device to transfer on the toilet.  There must be the side and

3

rear grab bars to allow the person to grab so that the person can slide or transfer on and off the toilet.  The toilet paper and the toilet protector must be low to enable the person a mobility device to retrieve them. The bathroom sink must be low enough to enable a person using a mobility device to use it.  The sink knob must be the level type because there are people with disabilities that cannot grasp the knob level.  The bathroom sink must not have the cabinet because the person using a mobility device cannot roll their legs under the cabinet. The piping under the cabinet must be insulated to prevent damage to the legs. Defendants failed to provide the required directional signage indicating an alternate accessible path of travel.  Plaintiff Wiggins's brother and others similarly situated using wheelchairs have difficulty when the path is too steep, exceeds the maximum slope, the required handrails are not provided, and no signage exists indicating an alternate path of travel.  Without directional signage indicating the accessible route, Plaintiff Wiggins and others would be required to hunt for the accessible entrance or surmise that there is not an alternative accessible entrance.  Also, the call button panel was located too high and was not positioned in a manner to make it readily accessible and usable by the persons using mobility devices.  The lowered call button is very important to people that use mobility devices because they sit lower and they cannot reach buttons that are high. Also, the mailboxes were too high.  The lowered mailboxes are very necessary to people that use mobility devices because they sit lower and they cannot reach mailboxes that are high. UAAAC Decl. at 9.

### III.   Applicable Law

To obtain a preliminary injunction in the district court, plaintiffs were required to demonstrate "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff[s] if preliminary relief is not granted, (3)

4

a balance of hardships favoring the plaintiff[s], and (4) advancement of the public interest (in certain cases)." <u>Johnson v. Cal. State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir.1995).

### IV. Argument

A. Case or Controversy Issues

1. Futile Gesture

In this case, the Plaintiff Club's main purpose is to make sure the apartments are fully accessible to people with disabilities, therefore, the Plaintiff Club is not indifferent to returning to the property and the Plaintiff Club's intent to return is genuine. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 953 (2011). Seeking to avoid unreasonable burdens on ADA plaintiffs, Title III explicitly provides that it does not require "a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization ... does not intend to comply" with the ADA. *Id.* (emphasis added). The "futile gesture" language of Title III is taken from *Teamsters v. United States,* 431 U.S. 324, 366, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Congress specifically intended that *Teamsters'* "futile gesture" reasoning be applied to ADA claims. *See* H. Rep. No. 101–485(II) at 82–83 (1990) *reprinted in* 1990 U.S.C.C.A.N. 303, 365 ("The Committee intends for this doctrine to apply to this title"); S.Rep. No. 101–116 at 43 (1989). Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation and is thereby deterred *1137 from visiting or patronizing that accommodation, the plaintiff has suffered an injury. *See also Davoll v. Webb,* 194 F.3d 1116, 1132–33 (10th Cir.1999) So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and

5

remains deterred, the injury under the ADA continues. Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133 (2002).

In this case the future gesture doctrine applies. Robert Aaron Mckissick has a disability protected by ADA as he cannot walk any distance. Wiggins had knowledge of the physical barriers from the Club. See Wiggins Decl. at 1-3. This knowledge deterred them from using Defendants' rental services.

2. Standing

A plaintiff has Article III standing if he has suffered an "injury in fact"—an invasion of a legally protected interest that is concrete and particularized, and actual or imminent—there is a causal connection between the injury and the conduct complained of, and the injury can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In the case of an alleged violation of the ADA, the "injury in fact" requirement is satisfied by a showing that the plaintiff is "currently deterred from attempting to gain access" to the place of public accommodation. Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137–38 (9th Cir.2002). "Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III." Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1042 n. 5 (9th Cir.2008).

Wiggins has standing to sue because the ADA protects not only individuals with disabilities, but also individuals associated with people with disabilities:

It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to

6

an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 42 U.S.C. § 12182(b)(1)(E). Accordingly, "[a] public accommodation shall not exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 36.205. "For example, it would be a violation of [28 C.F.R. § 36.205] for a day care center to refuse admission to a child whose brother has HIV ...." 56 Fed.Reg. 7452–01, 7462. Similarly, "if a place of public accommodation refuses admission to a person with cerebral palsy, ... his or her companions have an independent right of action under the ADA and this section." Id. ADA regulations require stadiums, theaters and similar venues to have not only wheelchair seating, but also adjacent companion seating. See Department of Justice's ADA Standards for Accessible Design (2010) § 221.3. Similarly, hotels are required to provide not only accessible rooms, but accessible doorways in all rooms and hallways. Id. § 224.1.2.

To state a valid claim for association discrimination a plaintiff must allege some 'specific, direct, and separate injury' as a result of association with a disabled individual. Glass v. Hillsboro Sch. Dist. 1J, 142 F.Supp.2d 1286, 1288 (D.Or.2001) (citations omitted). In Glass, the court found parents of a child with autism could not bring an associational discrimination claim against a school district for denying their independent specialists access to classrooms because the parents had no personal right, independent from their children's placement in school, *975 to have their experts observe the classrooms. The court stated, "plaintiffs must also demonstrate that they themselves were harmed; that is, that they suffered a specific, separate, and direct injury to themselves caused by defendant's actions." Id. at 1289. The court

7

provided a useful hypothetical to demonstrate when associational standing is proper: "[i]f a non-disabled companion is excluded from the theater because of his or her association with a disabled individual (for example, no room in the theater for wheelchairs), then the non-disabled companion suffers direct harm to his or her own independent right to be in the theater because of the association with a disabled person." Glass, 142 F.Supp.2d at 1291–92. George v. AZ Eagle TT Corp., 961 F.Supp.2d 971 (2013); Kotev v. First Colony Life Ins. Co., 927 F.Supp. 1316 (1996) Daubert v. City of Lindsay, 37 F.Supp.3d 1168 (2014); Ascencio v. ADRU Corporation, Not Reported in F.Supp.2d (2014); Nevarez v. Forty Niners Football Company, LLC, Slip Copy (2017); D.K. ex rel. G.M. v. Solano County Office of Educ., 667 F.Supp.2d 1184 (2009).

Wiggins lives with her brother Robert Aaron Mckissick. In this case, Ms. Wiggins went on the Internet to find accessible apartments. Ms. Wiggins and the club found Defendants' apartments. The club and Ms. Wiggins reviewed the photographs on the Internet to determine if the photographs contain any accessible features. #iggins Decl. at 3. The Club actually went to Defendants' apartments to determine for Ms. Wiggins if the apartments contained access features and architectural barriers. The apartments had both.  UAAAC at 8-9.  Ms. Wiggins does not have the time to go to each place to determine if the place is accessible. No sister of a person without a disability needs to go to an apartment to verify if their brother can use the apartment. The sister can go on a web and look at the photographs to determine if the brother can use the apartments. However, Ms. Wiggins did not have such a privilege and had to have the Club go verify accessibility at the apartments. Therefore, Ms. Wiggins cannot enjoy the privilege of looking on the internet for an apartment. Ms. Wiggins is denied the opportunity to decide what apartment to rent based upon the web photographs because of her association with Robert Aaron

8

Mckissick, her brother. Therefore, Ms. Wiggins has association standing pursuant to the ADA.

B. Content Discrimination

A person or entity engaged in content discrimination which gives rise to an appearance of viewpoint discrimination must explain that appearance away. See Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 285, 84 S.Ct. 710, 729, 11 L.Ed.2d 686 (1964))

In this matter, Defendants intentionally or unintentionally select photographs for Internet advertising with the content depicting images designed to solicit renters without disabilities. Since 1992 Defendants had a duty to offer readily achievable physical access features. These access features are not in the content of Defendants' Internet photographs. UAAAC Decl. at 5-7.   Plaintiffs assert this means Defendants do not have such features or a decision was made to exclude access feature images from the Internet photographs. In fact, Defendants have some access features. See UAAAC Decl at 8.   However, these images are not depicted on the Internet. Hence, there is viewpoint discrimination.

C. A Strong Likelihood Of Success On The Merits

The saying, "A picture is worth a thousand words, " is appropriate here. Also, appropriate is the saying, in this case, "Lack of a picture is worth a thousand words." Omission picture unwritten policies are the sort of "screening" criteria that ADA Title III addresses. Cf. Rendon v. Valleycrest Prods., Ltd., 294 F.3d 1279 (11th Cir. 2002) (holding that plaintiffs had stated a valid Title III claim that the "fast finger" telephone selection process used for first round of eligibility to compete on "Who Wants to be a Millionaire" was a discriminatory screening mechanism, policy or procedure, that deprived the deaf and those with limited finger mobility of the

9

opportunity to compete for the privilege of being a contestant).

The ADA sets forth "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). To achieve that goal, the ADA prohibits discrimination in public accommodations with respect to the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

ADA Title III covers places of public accommodation within residential facilities. See Section III–1.2000, ADA Title III Technical Assistance Manual, http://www.ada.gov/taman3.html. Thus, areas within multifamily residential facilities that qualify as places of public accommodation are covered by the ADA if use of the areas is not limited exclusively to owners, residents, and their guests.

> ILLUSTRATION 1: A private residential apartment complex includes a swimming pool for use by apartment tenants and their guests. The complex also sells pool "memberships" generally to the public. The pool qualifies as a place of public accommodation.
> ILLUSTRATION 2: A residential condominium association maintains a longstanding policy of restricting use of its party room to owners, residents, and their guests. Consistent with that policy, it refuses to rent the room to local businesses and community organizations as a meeting place for educational seminars. The party room is not a place of public accommodation.
> ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation.

See Section III–1.2000, ADA *1371 Title III Technical Assistance Manual, http://www.ada.gov/taman3.html ("ILLUSTRATION 3: A private residential apartment complex contains a rental office. The rental office is a place of public accommodation");30 Johnson v. Laura Dawn Apartments, LLC, 2012 WL 33040 at *1 n. 1 (E.D.Cal.2012) (Hollows, M.J.) ("[t]he leasing office of an apartment

complex is a place of public accommodation, despite the fact that the apartments themselves are not subject to the ADA"). <u>Kalani v. Castle Village LLC</u>, 14 F.Supp.3d 1359 (2014)

The Department Of Justice has "repeatedly affirmed that Title III [of the ADA] applies to websites that meet the definition of a public accommodation." *See* <u>Gorecki v. Hobby Lobby Stores, Inc.</u>, CV 17–1131–JFW (SKx), 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017). In 2010, the DOJ published an Advanced Notice of Proposed Rulemaking ("ANPR"), where the DOJ acknowledged that the Internet did not exist when Congress enacted the ADA, and that neither the text of the ADA nor the promulgating regulations specifically address private websites. *Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 FR 43460–01 (July 26, 2010). "Nevertheless, in its view, the statute's broad and expansive nondiscrimination mandate reaches goods and services provided by covered entities on websites over the internet. <u>Hobby Lobby Stores, Inc.</u>, 2017 WL 2957736, at *5 (citation omitted).

The requirement that a place of public accommodation refer to a physical place, however, does not preclude a plaintiff from challenging a business' online offerings. So long as there is a "nexus"—that is, "some connection between the good or service complained of and an actual physical place"—a plaintiff may challenge the digital offerings of an otherwise physical business. *Id.* at 1114. In other words, the ADA "applies to the services of a place of public accommodation, not services in a place of public accommodation. To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute." <u>Nat'l Fed'n of the Blind v. Target Corp.</u>, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) (emphasis

11

added) (citing, *inter alia*, <u>Weyer</u>, 198 F.3d at 1115 (holding that "whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services")).

Defendants have a physical location and they offer rental services on the Internet. Defendant offers the subject property on its website. See Exhibit B to Decl. UAAAC. The website states it has a physical location. See Exhibit B to Decl. UAAAC. See Exhibit B to Decl. UAAAC. <u>Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.</u>, 603 F.3d 666 (2010).  [Title III prohibits discrimination in the enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." The ordinary meaning of this language is that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services. This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided. Thus, a bookstore cannot discriminate against disabled people in granting access but need not assure that the books are available in Braille as well as print. Likewise, an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled. See 671].

1.  Denial of the Opportunity to Participate

The Eighth Circuit held, "By placing trees, decorations, upholstered chairs, mannequins displaying merchandise, and a large marketing image on the back wall of the porch entrance, Abercrombie has provided a "facility, privilege, advantage, or accommodation" to some of its customers while denying some customers the opportunity to participate on the basis of their disability. 42 U.S.C. § 12182(b)(1)(A)(i). The effect is to create a benefit for some customers that is denied

12

to others on the basis of disability. By requiring customers who are unable to use stairs to enter the store through entrances that are not adorned or used even remotely like the porch entrance, Abercrombie has afforded a "facility ... or accommodation that is not equal to that afforded to other individuals," id. § 12182(b)(1)(A)(ii), and that is "different or separate from that provided to other individuals." Id. § 12182(b)(1)(A)(iii). Finally, Abercrombie's use of this exclusive entrance as a customer lounge, branding tool, and display area, combined with Abercrombie's provision of segregated, inferior accessible entrances, violates the ADA's mandate to provide facilities and accommodations "in the most integrated setting appropriate to the needs of the individual." Id. § 12182(b)(1)(B). The integration mandate "prohibit[s] exclusion and segregation of individuals with disabilities." 28 C.F.R. § 36, App. C, at 901 (agency guidance on Title III's integration mandate). By excluding customers who use wheelchairs from the porch and requiring them to use the unadorned, inferior side entrances, Abercrombie effectively "relegates persons with disabilities to the status of second-class citizens." See id. Thus, Abercrombie's use of the porch violates Title III of the ADA.". Colorado Cross Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205 (2014)

In the instant matter, Plaintiffs are denied the opportunity to select an apartment on the Internet based on the photographs and text because there are no access feature photographs in Defendants' Internet photographs. Moreover, the websites' text described in great details about all the attributes and features of subject apartments but the text omits any mention of physical access amenities. As in Colorado Cross Disability Coalition, by many marketing images on the Web and text, Defendants have provided a "privilege, advantage, or accommodation" to some of its prospective renters while denying some prospective renters the opportunity to participate on the basis of their disability. The effect is to create a benefit for some

13

prospective renters that is denied to others on the basis of disability. By requiring prospective renters who are unable to view the Internet photographs to determine if the apartments would satisfy their needs, Defendants have afforded a "service…privilege ... or accommodation that is not equal to that afforded to other individuals.

2.  Integration: Websites Are Not Equal

Title III prohibits places of public accommodation from providing disabled individuals with "goods, services, facilities, privileges, advantages, or accommodations" that are not equal to, or are different or separate from those provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii), (iii). Title III also requires "[g]oods, services, facilities, privileges, advantages, and accommodations" be provided to individuals with a disability "in the most integrated setting appropriate to the needs of the individual." Id. § 12182(b)(1)(B). As the Ninth Circuit explained in Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir.2011).  The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

Indeed, the plain meaning of Title III's language is "that whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1115 (9th Cir.2000); Indeed, "[p]roviding services in the most integrated setting is a fundamental principle of the ADA." House Report, Pt. II at 385. As the Department of Justice has described it: Taken together, [§

14

12182(b)(1)(A)(iii) and § 12182(b)(1)(B) ] are intended to prohibit exclusion and segregation of individuals with disabilities and the denial of equal opportunities enjoyed by others, based on, among other things, presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities. 28 C.F.R. pt. 36, app. C (2011). Kalani v. Starbucks Corporation, 117 F.Supp.3d 1078 (2015)

Here, we have exclusion and segregation of individuals with disabilities. The Plaintiffs are excluded from the photograph experience because the photographs do not contain any accessible features. Moreover, the Plaintiffs are segregated from other web users because they are required to go to the place to see if it is usable for them or have a third person go for them when web users without disabilities can go to the website to determine if they can use the place. For example, the web user without disability does not need to go to the place to verify that the entrance is accessible however, people with disabilities are required to go to the place to verify that the entrance is accessible. Therefore, the Plaintiffs are not integrated into the web photograph experience.

       3.     Failure To Modify Internet Practices, Policies And Procedures

Discrimination under Title III of the ADA is defined to include "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii). The implementing regulation contains specific provisions for service animals and provides that "[g]enerally, a public accommodation shall modify policies, practices, or procedures to permit the use of a

15

service animal by an individual with a disability." Methods of making services, programs, or activities accessible to, or usable by, individuals with mobility or manual dexterity impairments are addressed by 28 CFR, including the requirements for modifications in policies, practices, or procedures (§ 36.302).  28 C.F.R. § 36.302(c)(1).  Beadle v. Postal, United States District Court, D. Hawaiʻi. May 02, 2017 Slip Copy 2017 WL 1731683; . Schutza v. FRN of San Diego, LLC. United States District Court, S.D. California. February 11, 2015 Not Reported in F.Supp.3d 2015 WL 574673;  Rose v. Springfield-Greene County Health Department, United States District Court, W.D. Missouri, Southern Division. December 05, 2008 Slip Copy 2008 WL 11337266

To prevail on a claim under the above statutory provision, Plaintiff must establish that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability. If Plaintiff establishes a prima facie case, then Defendant "must make the requested modification unless it proves that doing so would alter the fundamental nature of its business." Karczewski v. DCH Mission Valley LLC, 862 F.3d 1006 (2017)  PGA Tour, Inc. v. Martin, 532 U.S. 661 (2001); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075 (2004)

Thus, for all the reasons stated above, Defendants must modify their Internet offerings by offering or depicting internet access feature photographs.

4   Failure To Modify Architectural Barrier Removal Procedures

The ADA requires the Defendants to remove architectural barriers that are readily achievable. Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1042 n. 5 (9th Cir.2008)

16

In this case, there are some architectural barriers. The property was constructed in 1961, therefore, the property was operating back in 1992. UAAAC Decl. at 1. Therefore, the Defendants were required to remove architectural barriers 25 years ago. The Defendants are in the best position to determine what areas are for the public and what architectural barriers are readily achievable. It is not fundamentally fair to require people with disabilities to file a lawsuit to prove what architectural barriers are readily achievable. The Plaintiffs are proposing a modification to Defendants' procedures to require the Defendants to implement a barrier removal plan within 1 year. The Plaintiffs contend that it would cost nothing to create the procedure. Also, the proposed modification will not fundamentally alter the nature of the rental services.

> D. The Possibility Of Irreparable Injury To Plaintiffs If Preliminary Relief Is Not Granted

Plaintiff Club assists people with disabilities in finding accessible housing. Moreover, all independent living centers find accessible housing for people with disabilities. Decl. UAAAC at 3. The Internet has provided enormous access to goods and services without transportation. Requiring Plaintiffs and persons with disabilities and their associations to travel to apartments just to determine they have physical access features that enable use causes harm. People with mobility conditions must endure transportation challenges just to learn their destiny has architectural barriers precluding access. Under the barrier removal lawsuit a plaintiff must show knowledge of the barriers - thus, someone must go to the place of public accommodation. Then, once a lawsuit is filed lawyers like James Link and the public brand Plaintiffs and their lawyers with the letter "F" for frivolous lawsuit.

For these reasons, there is irreparable harm.

> E. A Balance Of Hardships Favoring The Plaintiffs

17

Defendants' websites exclude participation and integration for people with disabilities and their associations.  This frustrates Congress' purpose of integration for people with disabilities. Thus, the balance of the hardship favors Plaintiffs.

F.  Advancement Of The Public Interest (In Certain Cases)

In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities. 42 U.S.C. § 12101(a)(9) (finding that "the continuing existence of unfair and unnecessary discrimination and prejudice ... costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity"). This public interest is served by requiring entities to take steps to "assure equality of opportunity" for people with disabilities. See id. § 12101(a)(8). Enyart v. National Conference of Bar Examiners, Inc., 630 F.3d 1153 (2011)

There is a public interest in ensuring access features appear in Defendants' Internet photographs and web text because access to housing is extremely important. The Pew Research Center determined 38% of disabled Americans use the Internet. Therefore, the total amount of the disabled apartment users within Los Angeles that use the Internet is 14,379,183.28 (38% multiplied by 37,839,956).  Also, the total number of disabled renters that use the Internet within Los Angeles is 14,382,678.14 (38% multiplied by 37,849,153).  Prospective renters with disabilities desire to live in accessible housing. It makes no sense for them to complete a rental application without first investigating the access of the apartments.  Decl. of UAAAC at 10.

Plaintiff Club is an organization that advocates on the behalf of its members with disabilities when their civil rights and liberties have been violated.  Members of that organization include members that have disabilities that relate to the service, policy, programs and physical accessibility barriers at the property; those disabilities include, but are not limited to, sight, mobility disabilities and hearing disabilities.

18

Plaintiff Club has members who have been deterred from accessing Defendant's apartment rental services within Defendant's facilities.  The Club or Association is an international group that was started in 2011. One of the Club's core missions is to reduce charitable or public assistance dependence by people with mental and physical conditions by promoting business and employment opportunities. Another critical mission of the Club is to provide written testimony concerning proposed laws related to people with disability conditions. Further, another core mission of Plaintiff Association is to provide counseling and referral housing services to minorities with sight, mental, hearing and physical disability conditions. The Club's mission is frustrated by the rampant violations of the ADA and Fair Housing laws. In fact, Plaintiff Club association started its mission in 2011, but through its past experience believes it is very difficult or futile for the most part. Another core mission of Association is searching for accessible businesses and giving awards to them for being voluntarily compliant. These businesses include apartments.  Decl. of UAAAC at 3.

G. Mandatory Injunction Requested

Thus, Plaintiffs have satisfied all the above elements, thus, request the Court issue an injunction to:

1. Have access feature Internet photographs.
2. Create a written procedure requiring architectural barrier removal within 1 year as an ADA reasonable modification.

## IV.    CONCLUSION

For all the above reasons, this motion must be granted.

DATE: April 1, 2018

19

MEMORANDUM OF POINTS AND AUTHORITIES FOR THE MOTION FOR A
PRELIMINARY INJUNCTION
CASE # **2:18-cv-00032-MWF-JC**

1      /s/David C. Wakefield, Esq.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES FOR THE MOTION FOR A
PRELIMINARY INJUNCTION
CASE #  **2:18-cv-00032-MWF-JC**